UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD McKINNEY,

          Plaintiff,

    v.

STATE OF WASHINGTON
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES, et al.,

          Defendants.

CASE NO. C05-691JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' cross-motion for summary judgment (Dkt. # 42). The court has considered the papers filed in connection with this motion, as well as Plaintiff's supplemental brief (Dkt. # 58).[1] For the reasons stated below, the court GRANTS Defendants' motion.

## II. BACKGROUND

On March 26, 2002, Defendant Washington State Department of Social and Health Services ("DSHS") filed a Dependency Petition in state juvenile court concerning

---

[1] The court incorporates the discussion from its prior orders (Dkt. ## 46, 57) leading to its decision to allow Plaintiff an opportunity to submit a supplemental brief.

ORDER – 1

Plaintiff Richard McKinney's sons, R.M. and C.M. Pl.'s Resp., Ex. 5. Defendants based the Dependency Petition on their investigation into alleged abuse and neglect on the part of Mr. McKinney. Id. The following day, a King County Juvenile Court Commissioner held an initial shelter care hearing[2] and ordered temporary placement of both of Mr. McKinney's sons with their biological mother and joint custodian, Mary Cuniffe. Pl.'s Resp., Ex. 1. Defendants attest that Mr. McKinney did not object to the court's temporary placement of the children with their mother. Goodkin Decl. ¶ 3.

The juvenile court then attempted to hold a full shelter care hearing on at least two subsequent occasions; on each attempt, Mr. McKinney requested continuances in order to object to Defendants' evidence and to present his counter factual contentions. Id.; Pl.'s Resp., Ex. 1. Judge Catherine Shaffer finally held a hearing on May 24, 2002 and determined that the children should remain with Ms. Cuniffe. Pl.'s Resp., Ex. 3 at 6. The court also determined that it would consider Mr. McKinney's protestations at an upcoming fact-finding hearing, set for mid-August. Id. at 7. Apparently, Mr. McKinney again requested a continuance of court deadlines, and the court set a trial on the merits for mid-November. Ultimately, Mr. McKinney conceded sole custody of his children to his ex-wife, Ms. Cuniffe, pursuant to an agreed parenting plan order, filed in King County Superior Court in December of 2002. First Freimund Decl., Ex. 1. In turn, DSHS agreed to dismiss the dependency action. Id., Ex. 3.

Nearly two years later, Mr. McKinney filed suit against DSHS and two of its employees, social workers Ken Kramer and Michael Saunderson. In his complaint, Mr.

---

[2] "Shelter care" means temporary physical care of a child. RCW § 13.34.030(13); see also RCW § 13.34.050, .62, .65 (outlining various procedures, including notice requirements, for a shelter care hearing). The shelter care placement is temporary, pending the court's determination of dependency after a fact-finding hearing. A "dependent child" is a child who has been abandoned, abused or neglected, or has no parent or guardian capable of adequately caring for him or her. Id. at § 13.34.030(5).

ORDER – 2

McKinney alleges, among other things, that Defendants "violated [his] Federal Constitutional rights, as they interfered with his relationship with his children without due process, deprived him of equal protection, and violated his fundamental civil rights in violation of the 5th and 14th Amendments to the Constitution of the United States." Compl. ¶ 4.12. Mr. McKinney brings his federal constitutional claims pursuant to 42 U.S.C. § 1983 ("section 1983")[3] solely as to circumstances involving his youngest son, C.M. Pl.'s Resp. at 7-8. Defendants move to dismiss McKinney's constitutional claims on grounds of absolute or qualified immunity.

## III. ANALYSIS

On a motion for summary judgment, the court is constrained to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

---

[3] Section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

ORDER – 3

**A.     Mr. McKinney's Claim against DSHS**

To succeed on a section 1983 claim, Mr. McKinney must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived him of a constitutional right. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-1 (1986);  see also L.W. v. Grubbs, 974 F.2d 119, 120 (9th Cir. 1992). "Persons" liable for damages under section 1983 include state employees sued in their individual capacities. Hafer v. Melo, 502 U.S. 21, 25 (1992).  States and their agencies and state employees sued in their official capacities are not proper defendants under section 1983 and therefore cannot be sued under the statute. Id. at 25-6 (citing Will v. Michigan State Police, 491 U.S. 58, 62-71 (1989)).

At the threshold, Defendants contend that DSHS, as an arm of the State of Washington, is not a proper defendant for purposes of a section 1983 action.  Mr. McKinney does not refute this argument.  Moreover, courts within this circuit have concluded that sovereign immunity shields DSHS from section 1983 liability.  See, e.g., Boone v. Washington Dept. of Social and Health Services, No. 06-604, 2005 WL 1126936, *3 (W.D. Wash. May 9, 2005); Gutierrez v. Washington Dept. of Social and Health Services, No. 04-3004, 2005 WL 2346956, *4 (E.D. Wash. Sept. 26, 2005).  As such, the court GRANTS summary judgment as to Mr. McKinney's section 1983 claims against DSHS.  The court now turns to Mr. McKinney's claims against DSHS social workers Mr. Kramer and Mr. Saunderson, sued in their individual capacities (the "individual Defendants").[4]

---

[4] Mr. McKinney does not cite any particular conduct of Mr. Saunderson.  For purposes of this motion, the court assumes that Mr. Saunderon's conduct was commensurate with Mr. Kramer, although undoubtedly, Mr. Saunderson's involvement was far less.

ORDER – 4

**B.    Mr. McKinney's Claim Against Mr. Kramer and Mr. Saunderson**

Social workers who perform quasi-prosecutorial duties such as instituting dependency proceedings are entitled to absolute immunity from suit. Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003). Following Miller, the Ninth Circuit in Doe v. Lebbos upheld a district court's grant of absolute immunity to a social worker for her "quasi-prosecutorial" actions in "investigating and presenting evidence to the dependency court." 348 F.3d 820, 825 (9th Cir. 2003). In addition, a social worker enjoys absolute immunity for her "quasi-judicial" actions, such as execution of a court order in the context of a child welfare proceeding. Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir.1991).

Here, Mr. McKinney contends that the Defendants deprived him of his fundamental right to the care and custody of his youngest child, C.M., without adequate due process. In framing his constitutional violation, Mr. McKinney focuses heavily on the inadequacy of the investigation surrounding accusations against him involving his eldest son, R.M. As to how this bears on his relationship with C.M., Mr. McKinney's apparent contention is that Defendants violated his constitutional rights when they removed his youngest son without any particular allegations of abuse or neglect as to him. Or, in Mr. McKinney's words, "Kramer not only deprived Plaintiff of his companionship with C.M. without probable cause, without reasonable cause, but he did so at first without legal authority." Pl.'s Resp. at 9.

The court concludes that absolute immunity shields Mr. Kramer and Mr. Saunderson from suit. First, Defendants are immune from suit because they acted pursuant to a court order when they effectuated temporary placement of C.M. with his mother for the pendency of the proceeding. Pl.'s Resp., Ex. 1. Moreover, absolute immunity shields the individual defendants insofar as their decision to name C.M. in filing the dependency action that otherwise centered on neglect and alleged abuse as to

ORDER – 5

R.M. Miller, 335 F.3d at 898.  That is, whether or not to file a dependency petition that names both children when abuse and neglect allegations are raised only as to one, is the type of conduct that this court concludes falls within the realm of prosecutorial discretion that is historically protected from suit.

Even if the individual defendants are not entitled to absolute immunity, the court concludes that qualified immunity applies.  Government officials performing discretionary functions enjoy qualified immunity from civil damages so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  Saucier v. Katz, 533 U.S. 194, 201-03 (2001).  The court must first determine if the evidence taken in the light most favorable to Mr. McKinney shows that a constitutional violation occurred.  Id. at 201.  If, on Mr. McKinney's facts, no constitutional violation occurred, the inquiry ends and the court must dismiss the claims.  Id. ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

Even taken in the light most favorable to Mr. McKinney, the court concludes that there are insufficient facts of a constitutional violation as to the individual Defendants. Most importantly, the court cannot conclude that the individual Defendants have *caused* any deprivation of Mr. McKinney's rights.  See Arnold v. Int'l Bus.Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981) (holding that causation is element of section 1983 claim). Indeed, the juvenile court never made a final dependency determination based on the individual Defendants' investigation nor did the Defendants permanently remove C.M. from the care and custody Mr. McKinney.  Rather, Mr. McKinney eventually stipulated that his ex-wife should have sole custody of the children as part of the couple's dissolution proceeding.  Celotex, 477 U.S. at 323 ("A complete failure of proof

ORDER – 6

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Regardless, Mr. McKinney appears to argue that the Defendants violated his liberty interests and due process rights in recommending or carrying out even temporary placement of C.M. with his mother during pendency of the dependency action. Mr. McKinney's contention hinges on his allegation of an inadequate investigation that led to Defendants inclusion of C.M. in the dependency petition. Again, even on his facts, Mr. McKinney fails to show a constitutional deprivation. First, unlike the multitude of cases cited by Mr. McKinney involving seizure of children without probable or reasonable cause, the temporary removal of C.M. from Mr. McKinney's care occurred with the backing of a court order – and ultimately, by his concession. Further, setting aside whether the individual Defendants are even implicated in Mr. McKinney's due process claims, the evidentiary record belies Mr. McKinney's allegations that the juvenile court "flatly refused" him an adequate hearing. Rather, the evidence of multiple hearings (and extensions at Mr. McKinney's request) were more than sufficient to satisfy the demands of due process at the shelter hearing stage of a dependency action. Indeed, the juvenile court expressly preserved Mr. McKinney's right to present his evidence at a later, fact-finding hearing.[5] Mr McKinney does not allege that the individual Defendant prevented him from putting on his own evidence at any stage of the dependency action nor that he received inadequate notice. Without more, the court cannot conclude that the individual Defendants have deprived Mr. McKinney of any constitutional right.

---

[5]The court finds Mr. McKinney's citation to those cases concerning due process violations at the *deprivation* stage of a child welfare action inapposite to the preliminary shelter care hearing stage of the dependency action in this case. See In re Dependency of H.W., 854 P.2d 1100, 1102-03 (Wash. Ct. App. 1993) (distinguishing the due process requirements based on the stage of the proceedings and noting that, for example, rules of evidence do not apply in shelter care hearing).

ORDER – 7

Because the court concludes that there is insufficient evidence supporting a constitutional violation, the court need not reach the second prong of the qualified immunity test.

## C. Supplemental Jurisdiction Over Remaining State Law Claims

Mr. McKinney originally filed this action in state court in September 2004. The sole basis for Defendants' removal in April 2005 was Mr. McKinney's addition of a federal claim under section 1983. With the court's ruling that dismisses this federal question, only state law claims remain. The court concludes that Mr. McKinney ought to be allowed to litigate his state law claims in the forum in which he first asserted them. As such, the court exercises its discretion to remand the remaining state law claims to King County Superior Court. See 28 U.S.C. § 1367(c)(3); Swett v. Schenk, 792 F.2d 1447, 1450 (9th Cir. 1986) ("[I]t is within the district court's discretion, once the basis for removal jurisdiction is dropped, whether to hear the rest of the action or remand it to the state court from which it was removed.").

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' cross-motion (Dkt. # 42), which dismisses Mr. McKinney's federal constitutional claims against all named Defendants. The court REMANDS the remaining state law claims to King County Superior Court.

Dated this 23rd day of August, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 8